# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **Criminal No.: 14-** |
| ) | |
| SAENA TECH CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFERRED PROSECUTION AGREEMENT**

Defendant Saena Tech Corporation (the "Company"), by its undersigned representatives,

pursuant to authority granted by the Company's Board of Directors, Jin Seok Kim ("Mr. Kim"),

and the Criminal Division of the Office of the United States Attorney for the District of

Columbia ("the Office") enter into this deferred prosecution agreement (the "Agreement"). The

terms and conditions of this Agreement are as follows:

**Criminal Information and Acceptance of Responsibility**

1.       The Company acknowledges and agrees that the Office will file the attached one-

count criminal Information in the United States District Court for the District of Columbia

charging the Company with Bribery of a Public Official, in violation of 18 U.S.C. 201(b)(1)(A),

(B) & (C).  In so doing, the Company: (a) knowingly waives its right to indictment on this

charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United

States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal

Procedure 48(b); and (b) knowingly waives for purposes of this Agreement and any charges by

the United States arising out of the conduct described in the attached Statement of Facts any

objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Columbia.

2.     The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents, as charged in the Information and as set forth in the Statement of Facts attached hereto as Attachment A and incorporated by reference into this Agreement, and that the allegations described in the Information and the Statement of Facts are true and accurate.  Should the Office pursue the prosecution that is deferred by this Agreement, the Company agrees that it will neither contest the admissibility of nor contradict the Statement of Facts in any such proceeding, including any guilty plea, trial, or sentencing proceeding.  Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents.

## **Term of the Agreement**

3.     This Agreement is effective for a period beginning on the date on which the Information is filed and ending two (2) years from that date (the "Term").  However, the Company agrees that, in the event that the Office determines, in its sole discretion, that the Company has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Office, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Office's right to proceed as provided in Paragraphs Twelve through Fifteen below.  Any extension of the Agreement extends all terms of this Agreement for an equivalent period.  Conversely, in the event the Office finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for an

2

extension and that the other provisions of this Agreement have been satisfied, the Term of the Agreement may be terminated early.

## Relevant Considerations

4.    The Office enters into this Agreement based on the individual facts and circumstances presented by this case and the Company.  Among the facts considered were the following: The Company has provided assistance by voluntarily producing documents and making Mr. Kim, a Korean citizen, available for interview.  During his interview, Mr. Kim provided the investigation with considerable amounts of relevant and helpful evidence regarding illegal conduct involving a former public official employed by the United States Department of the Army and others.

5.    The Company shall continue to cooperate fully with the Office in any and all matters relating to corrupt payments in connection with United States government contracts, subcontracts, and work orders, subject to applicable law and regulations.  At the request of the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement authorities and agencies in any investigation of the Company or its affiliates, or any of its present and former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to such corrupt payments.  Further, Jin Seok Kim's obligations to cooperate shall be co-extensive to the obligations of Saena Tech under this paragraph.  Specifically, Saena Tech and Mr. Kim agree that their cooperation shall include without limitation the following:

a.    Truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of its parent company and affiliates, if any, and those of its present and former directors, officers,

3

employees, agents, and consultants concerning all matters relating to corrupt payments in connection with United States government contracts, subcontracts, and work orders about which the Company has any knowledge or about which the Office may inquire.  This obligation of truthful disclosure includes the obligation of the Company to provide to the Office, upon request, any document, record, or other tangible evidence relating to such corrupt payments about which the Office may inquire of the Company.

b.      Upon request of the Office, with respect to any issue relevant to its investigation of corrupt payments, the Company shall designate knowledgeable employees, agents, or attorneys to provide to the Office the information and materials described in Paragraph 5(a) above on behalf of the Company.  It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c.      With respect to any issue relevant to the Office's investigation of corrupt payments in connection with United States government contracts, subcontracts, and work orders, the Company shall use its best efforts to make available for interviews or testimony, as requested by the Office, present or former officers, directors, employees, agents and consultants of the Company.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.  Mr. Kim specifically agrees to travel to the United States for interviews or testimony as requested by this Office.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law enforcement and regulatory authorities.  In the event this Office requests that Mr. Kim travel to the United States, this Office agrees to pay for Mr. Kim's reasonable travel and lodging

4

expenses.  With the exception of Mr. Kim, this Office understands that the Company can use only its best efforts with respect to cooperation by individuals and that it cannot dictate any particular individual's cooperation or availability.  With the exception of Mr. Kim, the failure of an individual to cooperate, alone, will not be deemed a violation of the Company's obligations under this Agreement.

        d.      With respect to any information, testimony, documents, records, or other tangible evidence provided to the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, of such materials as the Office, in its sole discretion, shall deem appropriate.

### Payment of Monetary Penalty

        6.      The Company agrees to pay a monetary penalty in the amount of $500,000, to the United States Treasury within ten (10) days of the filing of the Information.  The Company and the Office agree that this monetary penalty is appropriate given the facts and circumstances of this case.  The $500,000 penalty is final and shall not be refunded.  Furthermore, nothing in this Agreement shall be deemed an agreement by the Office that $500,000 is the maximum penalty that may be imposed in any future prosecution, and the Office is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Office agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment.  The Company acknowledges that no United States tax deduction may be sought in connection with the payment of any part of this $500,000 penalty.

**Conditional Release from Liability**

7.      In return for the full and truthful cooperation of the Company, and its compliance with the other terms and conditions of this Agreement, the Office agrees, subject to Paragraphs Twelve through Fifteen below, not to use any information related to the conduct described in the attached Statement of Facts against the Company in any criminal or civil case, except:  (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.  In addition, the Office agrees, except as provided herein, that it will not bring any criminal case against the Company related to the conduct of present and former officers, directors, and employees as described in the attached Statement of Facts, or relating to information that the Company disclosed to the Office prior to the date on which this Agreement was signed.  Also, subject to the other paragraphs of this Agreement, this Office agrees, except as provided herein, that it will not bring any criminal charges against the Managing Director of Saena Tech, Jin Seok Kim, related to the conduct described in the attached Statement of Facts or relating to information that the Company or Mr. Kim disclosed to the Office prior to the date on which this Agreement was signed.  This Agreement not to prosecute Saena Tech or Mr. Kim does not extend to federal or local crimes of violence as those terms are defined in 18 U.S.C. §16 and D.C. § 23-1331(4).  It is understood that the United States has no evidence, as of the date of this Agreement, of any crimes of violence involving Saena Tech or Mr. Kim.

        a.      This Paragraph does not provide any protection against prosecution for any future corrupt payments or other illegal acts.

6

b.      In addition, except as provided above regarding Mr. Kim, this Paragraph does not provide any protection against prosecution of any present or former officer, director, employee, shareholder, agent, consultant, contractor, or subcontractor of the Company for any violations committed by them.

### Corporate Compliance Program

8.      The Company represents that, by April 15, 2014, it will implement a compliance and ethics program designed to prevent and detect violations of the applicable anti-corruption laws throughout its operations including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other high-risk activities.  Implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Office as of the date of signing of this Agreement for which the Company would otherwise be responsible.

9.      In order to address any deficiencies in its internal controls, policies, and procedures, the Company represents that, by April 15, 2014, it will undertake, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal controls, policies, and procedures regarding compliance with the applicable anti-corruption laws. If necessary and appropriate, the Company will adopt new or modify existing internal controls, policies, and procedures in order to ensure that the Company maintains:  (a) a system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance code, standards, and procedures designed to detect and deter violations of the applicable anti-corruption laws.

**Deferred Prosecution**

10.     In consideration of:  (a) the past and future cooperation of the Company and Mr.

Kim described in Paragraphs Four through Nine above; (b) the Company's payment of a criminal

penalty of $500,000; and (c) the Company's implementation and maintenance of remedial

measures as described in Paragraphs 8 and 9 above, the Office agrees that any prosecution of the

Company and Mr. Kim for the conduct set forth in the attached Statement of Facts, and for the

conduct that the Company and Mr. Kim disclosed to the Office prior to the signing of this

Agreement, be and hereby is deferred for the Term of this Agreement.

11.     The Office further agrees that if the Company and Mr. Kim fully comply with all

of their obligations under this Agreement, the Office will not continue the criminal prosecution

against the Company described in Paragraph 1, and will not prosecute Mr. Kim as described in

Paragraph 7, and, at the conclusion of the Term, this Agreement shall expire.  Within thirty (30)

days of the Agreement's expiration, the Office shall seek dismissal with prejudice of the criminal

Information filed against the Company described in Paragraph 1.

**Breach of the Agreement**

12.     If, during the Term of this Agreement, the Office determines, in its sole

discretion, that the Company or Mr. Kim have (a) committed any felony under U.S. federal law

subsequent to the signing of this Agreement, (b) at any time provided in connection with this

Agreement deliberately false, incomplete, or misleading information, or (c) otherwise breached

the Agreement, the Company and Mr. Kim shall thereafter be subject to prosecution for any

federal criminal violation of which the Office has knowledge, including the charges in the

Information described in Paragraph 1, which may be pursued by the Office in the U.S. District

8

Court for the District of Columbia or any other appropriate venue.  Any such prosecution may be premised on information provided by the Company or Mr. Kim.  Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company or Mr. Kim notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year.  Thus, by signing this Agreement, the Company and Mr. Kim agree that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

13.    In the event that the Office determines that the Company or Mr. Kim has breached this Agreement, the Office agrees to provide the Company and Mr. Kim with written notice of such breach prior to instituting any prosecution resulting from such breach.  The Company and Mr. Kim shall, within thirty (30) days of receipt of such notice, have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Office shall consider in determining whether to institute a prosecution.

14.    In the event that the Office determines that the Company has breached this Agreement:  (a) all statements made by or on behalf of the Company to the Office or to the Court, including the attached Statement of Facts, and any testimony given by or on behalf of the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against the Company; and (b) the Company shall not assert any claim under the United States

9

Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that statements made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed.  The decision whether conduct or statements of any current director or employee, or any person acting on behalf of, or at the direction of, the Company will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Office.

15.     The Company acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment.  The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

## Sale or Merger of Company

16.     The Company agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

## Public Statements by Company

17.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of

responsibility by the Company set forth above or the facts described in the attached Statement of Facts.  Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement and the Company thereafter shall be subject to prosecution as set forth in Paragraphs Twelve through Fifteen of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Office.  If the Office determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

18.	The Company agrees that if it, or any of its direct or indirect subsidiaries or affiliates, issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Office and the Company; and (b) whether the Office has no objection to the release.

11

19.     The Office agrees, if requested to do so, to bring to the attention of governmental and other debarment authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation.  By agreeing to provide this information to debarment authorities, the Office is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by the debarment authorities.

### Limitations on Binding Effect of Agreement

20.     This Agreement is binding on the Company and the Office but specifically does not bind any other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the facts and circumstances relating to the extent, nature, and quality of the cooperation of the Company and Mr. Kim and their compliance with their other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company or Mr. Kim.

### Notice

21.     Any notice to the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the Chief – Fraud and Public Corruption Section, Criminal Division, U.S. Attorney's Office for the District of Columbia, 555 Fourth Street, N.W., Washington, D.C. 20530.  Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Jin Seok Kim, Managing Director, Saena Tech Corporation, 3F Chaing-mi, BD 5-427,

Hyonchang-Dong, Yongson-Gu, Seoul, South Korea.   Notice shall be effective upon actual receipt by the Office or the Company.

### Complete Agreement

22.     This Agreement sets forth all the terms of the agreement between the Company and the Office.   No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, the attorneys for the Company, and a duly authorized representative of the Company.

**AGREED:**

**FOR SAENA TECH CORPORATION:**

Date: 3. 21. 2014

By: _____
Mi Kyoung Lee
Chief Executive Officer
Saena Tech Corporation

Date: 3/21/2014

By: _____
Sucheol Noh
Counsel for Saena Tech Corporation

**FOR JIN SEOK KIM:**

Date: 3/21/2014

By: _____
Jin Seok Kim

Date: 3/21/2014

By: _____
Steven Brizek
Kim & Bae, P.C.
Counsel for Jin Seok Kim

13

**FOR THE OFFICE OF THE UNITED STATES ATTORNEY**
**FOR THE DISTRICT OF COLUMBIA:**

RONALD C. MACHEN Jr.
United States Attorney

Date: _3/21/14_                     BY: _____

Michael K. Atkinson
Bryan Seeley
James E. Smith
Assistant United States Attorneys
United States Attorney's Office for the
District of Columbia

14

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Saena Tech Corporation (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company and myself, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company and myself. Counsel fully advised me of my rights as well as the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Chief Executive Officer for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: 3. 21 , 2014

SAENA TECH CORPORATION

By: _____
Mi Kyoung Lee
Chief Executive Officer
Saena Tech Corporation

## CERTIFICATE OF COUNSEL

I am counsel for Saena Tech Corporation (the "Company") in the matter covered by this Agreement.   In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company's Board of Directors.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Chief Executive Officer of the Company.  I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.  To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: _March 21_ , 2014

By: _____
      Sucheol Noh, Esq.
      Counsel for Saena Tech Corporation

ATTACHMENT A

## **STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the Office of the United States Attorney for the District of Columbia (the "Office") and Saena Tech Corporation ("SAENA TECH"). SAENA TECH hereby agrees and stipulates that the following information is true and accurate. SAENA TECH admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees, and agents as set forth below. Should the Office pursue the prosecution that is deferred by this Agreement, SAENA TECH agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any such proceeding. If this matter were to proceed to trial, the Office would prove beyond a reasonable doubt, by admissible evidence, the facts alleged below and set forth in the criminal Information attached to this Agreement. This evidence would establish the following:

### **Relevant Individuals and Entities**

1.      SAENA TECH CORPORATION ("SAENA TECH "), has offices in Seoul, South Korea, and operated as a subcontractor for U.S.-based government contracting companies providing technical services and equipment for the Eighth United States Army. JIN SEOK KIM ("KIM") founded SAENA TECH in 2005.

2.      The Program Executive Office Enterprise Information Systems ("PEO EIS") was an organization within the United States Department of the Army ("Army"), which provided infrastructure and information management systems to the Army. The Project Manager, Defense Communications and Army Transmission Systems ("PM DCATS"), was a division of PEO EIS.

The Product Management, Installation Information Infrastructure Modernization Program ("PM I3MP"), was another division of PEO EIS.

3.      Until on or about April 27, 2012, Public Official C was a public official. Specifically, Public Official C was an Assistant Project Manager for PM DCATS until in or about June 2010.  While employed as an Assistant Project Manager, Public Official C resided and worked in Seoul, South Korea.  From in or about June 2010 until Public Official C's resignation on or about April 27, 2012, Public Official C was a Product Director for PMI3MP. While employed as a Product Director, Public Official C resided in Virginia and worked at Fort Belvoir, Virginia.

4.      While stationed in Seoul, South Korea, Public Official C was the Contracting Officer Technical Representative ("COTR") for a task on a prime contract with the Eighth United States Army, Command and Control C4IT Technical Support Services, prime contract number W15P7T-06-D-E407 (the "Prime Contract").  In this position, Public Official C had influence over the selection of subcontractors who performed work under the Prime Contract.

5.      Company E was a government contractor with offices in Ashburn, Virginia. From in or about January 2009 through in or about February 2010, Company E obtained subcontracts under the Prime Contract to provide services to the Army.

6.      Company F was the prime contractor for the Prime Contract.  Company F maintained offices in Eatontown, New Jersey.

7.      Oh Sung Kwon, a/k/a Thomas Kwon ("Kwon"), was the co-founder and Chief Financial Officer of Avenciatech, Inc. ("Avenciatech"), which maintained its corporate headquarters in Annandale, Virginia.  Since in or about October 2009, Avenciatech was a

government contractor that obtained subcontracts under the Prime Contract to provide services to the Army.

8.    Company G was a government contractor with offices in Bohemia, New York. Since in or about 2008, Company G obtained subcontracts to provide services to the Army, including subcontracts under the Prime Contract.  Employee G-1 was the President and Chief Executive Officer of Company G.

9.    SAENA TECH obtained subcontracts from Company E, Company F, Avenciatech, and Company G to provide services to the Army.

10.    From in or about January 2009 until in or around December 2009, John Han Lee ("Lee") was an employee of Company E.  In or about December 2009, Lee left Company E and became the Vice President-Operations of Avenciatech.

**Things of Value provided to Public Official C by SAENA TECH**

11.    In or around 2005, SAENA TECH had a subcontract to perform work on a project for the Army that originated with PM DCATS.  In or around 2005, KIM met Public Official C in connection with SAENA TECH's work on this contract.  In 2008, KIM knew that Public Official C was the head of PM DCATS.  KIM believed that Public Official C had the ability to influence the selection of subcontractors for work on the Prime Contract.

12.    In or around 2008, in South Korea, KIM met Lee when Lee approached KIM and informed KIM that he was looking for a company that could provide technical support on a contract with the United States government.

13.    In or around February 2009, SAENA TECH was performing a subcontract for a project administered by Public Official C in Daegu, South Korea.  KIM was present in Daegu

and learned from Lee that Public Official C wanted a car. Lee further informed KIM that Lee would make the arrangements for the purchase, but sought KIM's assistance in purchasing the car for Public Official C. KIM agreed to pay approximately $10,000 towards the purchase of a 2009 Lexus ES350 for Public Official C and to wire the purchase price of the Lexus, approximately $35,000, to Toyota Motor Corporation Korea. KIM considered this to be a loan to Lee and expected Lee to pay the $10,000 back, but Lee never paid it back. Public Official C had the use of the 2009 Lexus ES350 from in or around March 2009 until Public Official C left South Korea in June 2010.

14.    Before Public Official C left South Korea, Public Official C attempted to sell the Lexus, but was unable to do so. KIM gave Lee $25,000 in cash to purchase the Lexus from Public Official C. Lee purchased the Lexus from Public Official C using the $25,000 from KIM. Lee did not tell Public Official C that the $25,000 came from KIM.

15.    In or around the Spring of 2009, Lee suggested to KIM that KIM should pay money to Public Official C. KIM believed that if KIM did not pay Public Official C, SAENA TECH's ability to retain subcontracts and obtain new ones based on merit would be jeopardized.

16.    In or about September 2009, KIM gave approximately $40,000 in cash to Public Official C to assist SAENA TECH in obtaining and retaining subcontracting opportunities through subcontracts administered by Public Official C on behalf of the Army.

17.    In or about April 2010, KIM gave approximately $30,000 in cash to Public Official C in cash to assist SAENA TECH in obtaining and retaining subcontracting opportunities through subcontracts administered by Public Official C on behalf of the Army.

A-4

18.     In or about April 2010, Public Official C, KIM, and Employee G-1 met and agreed that KIM would cause SAENA TECH to submit an invoice to Company G for $250,000 for work purportedly performed by SAENA TECH on a subcontract to Company G for work administered by Public Official C on behalf of the Army.  Public Official C, KIM, and Employee G-1 agreed that SAENA TECH would not actually perform any work for the $250,000 invoice. KIM initially believed the $250,000 would be used on Company G's offices, but later learned that most of the money would be paid to Public Official C.  As directed by Employee G-1, KIM agreed to pay to Public Official C the proceeds obtained from the fraudulent invoice, less 30% for taxes owed by SAENA TECH on the $250,000 payment.  On or about April 5, 2010, as directed by Employee G-1, KIM submitted the fraudulent invoice to Company G for $250,000. KIM paid the net proceeds obtained from the fraudulent invoice, which amounted to $175,000, in cash to Public Official C in several installments between on or about April 9, 2010 and on or about May 6, 2010.

19.     In addition to the cash payments that KIM provided to Public Official C, KIM, on behalf of SAENA TECH, provided Public Official C with meals and entertainment to assist SAENA TECH in obtaining and retaining subcontracting opportunities through subcontracts administered by Public Official C on behalf of the Army.

20.     From in or around January 2009 until the present, SAENA TECH obtained more than fifteen subcontracts from Company E, Company F, Avenciatech, and Company G to perform work for the Army.

A-5

ATTACHMENT B

**<u>CERTIFICATE OF CORPORATE RESOLUTIONS</u>**

WHEREAS, SAENA TECH CORPORATION (the "Company") has been engaged in discussions with the United States Department of Justice, Office of the United States Attorney for the District of Columbia (the "Office"), regarding issues arising in relation to certain improper payments to a United States public official to facilitate the award of contracts and assist in obtaining business for the Company; and

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into a certain agreement with the Office; and

WHEREAS, the Company's Chief Executive Officer, Mi Kyoung Lee, together with outside counsel for the Company, have advised the Board of Directors of the Company of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such agreement with the Office;

Therefore, the Board of Directors has RESOLVED that:

1.      The Company (a) acknowledges the filing of the one-count Information charging the Company with bribery of a public official, in violation of Title 18, United States Code, Section 201(b)(1)(A), (B) & (C);  (b) waives indictment on such charges and enters into a deferred prosecution agreement with the Office; and (c) agrees to accept monetary criminal penalties against Company totaling  $500,000, and to pay a total of $500,000 to the United States Treasury with respect to the conduct described in the Information;

2.      The Chief Executive Officer of the Company, Mi Kyoung Lee, is hereby authorized, empowered, and directed, on behalf of the Company, to execute the Deferred

Prosecution Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as the Chief Executive Officer of the Company, Mi Kyoung Lee, may approve;

3.      The Chief Executive Officer of the Company, Mi Kyoung Lee, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing resolutions; and

4.      All of the actions of the Chief Executive Officer of the Company, Mi Kyoung Lee, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.

Date: _____, 2014

By: _____
Mi Kyoung Lee
Chairperson of the Board of Directors
SAENA TECH CORPORATION

By: _____
Jin Seok Kim
Managing Director
SAENA TECH CORPORATION

B-2